**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALEX AGYEMANG, | |
| Petitioner, | CIVIL ACTION NO. 3:26-CV-00688 |
| v. | (MEHALCHICK, J.) |
| WARDEN OF CLINTON COUNTY CORRECTIONAL FACILITY, et al., | |
| Respondents. | |

**MEMORANDUM**

Petitioner, Alex Agyemang ("Agyemang") brings this petition for writ of habeas

corpus. (Doc. 1). On March 17, 2026, Agyemang filed the instant petition, requesting that

Respondents Warden of Clinton County Correctional Facility, ICE Field Office Director,

Secretary of Homeland Security, and Attorney General of the United States[1] release him from

custody at the Clinton County Correctional Facility in McElhattan, Pennsylvania. (Doc. 1,

---

[1] Pursuant to the "immediate custodian rule," the only proper respondent in this case is Angela Hoover ("Hoover"), Warden of the Clinton County Correctional Facility. "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Agyemang is detained at the Clinton County Correctional Facility, Hoover is the proper respondent. (Doc. 1, at 1); *see Rumsfeld*, 542 U.S. at 434. As such, Respondents Brian McShane, ICE Philadelphia Field Office Director; Markwayne Mullin, Secretary of Homeland Security, and Todd Blanche, Acting Attorney General of the United States are **DISMISSED**. However, the government will be bound by the Court's judgment because Hoover is acting as an agent of the federal government by detaining Agyemang on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, 3:25-cv-01896, 2025 WL 3522932, at *8 (M.D. Pa. Nov. 13, 2025), *adopted in part, rejected in part*, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (finding same).

at 2). For the following reasons, Agyemang's petition (Doc. 1) is **GRANTED**.

I.    FACTUAL AND PROCEDURAL BACKGROUND

The following background is derived from Agyemang's petition, Hoover's response, and the exhibits thereto. (Doc. 1; Doc. 14). Agyemang is a citizen of Ghana, who entered the United States on a B2 visa as a temporary visitor for pleasure on or about June 4, 2006. (Doc. 14, at 2). Agyemang overstayed his B2 visa, and on April 9, 2019, officers in Newark, New Jersey arrested Agyemang and charged him with receiving stolen property. (Doc. 14, at 3). On April 16, 2019, ICE served Agyemang with a Notice to Appear, charging Agyemang as removable for remaining in the United States longer than permitted as a nonimmigrant visitor. (Doc. 14, at 3). On May 21, 2019, Agyemang posted bond, and ICE released him from custody. (Doc. 1, at 3; Doc. 14, at 3).

On April 20, 2023, the United States District Court for the District of New Jersey charged Agyemang with one count of conspiracy to sell, receive, or possess stolen property and one count of sale, receipt, or possession of stolen goods and sentenced Agyemang to a year and a day of imprisonment. (Doc. 14, at 4). Following his criminal sentence, ICE transferred Agyemang to immigration detention on March 4, 2025. (Doc. 1, at 3; Doc. 14, at 4). On August 6, 2025, an immigration judge issued an order removing Agyemang but withholding removal to his home country, Ghana under the Convention Against Torture. (Doc. 1, at 3; Doc. 14, at 4). Agyemang did not appeal the removal order, making it a final order of removal. (Doc. 1, at 3; Doc. 14, at 4).

On January 16, 2026, the Department of Homeland Security ("DHS") informed Agyemang that it intended to remove him to Guinea. (Doc. 1, at 4; Doc. 14, at 4). Agyemang expressed fear of removal to Guinea and requested a fear interview. (Doc. 1, at 4). On

February 6, 2026, an ICE officer interviewed Agyemang regarding his fear of removal to Guinea and determined that Agyemang did not establish that it is more likely than not that he will be persecuted or tortured in Guinea. (Doc. 2-1, at 2; Doc. 14, at 4). Since his final order of removal, Agyemang has been in immigration detention for over eight months. (Doc. 1, at 3; Doc. 14, at 4). In total, Agyemang has spent over a year in ICE custody. (Doc. 1, at 3; Doc. 14, at 4).

Agyemang filed the instant petition for writ of habeas corpus, memorandum in support, motion to expedite proceedings, and motion for immediate release on March 17, 2026. (Doc. 1; Doc. 2; Doc. 4). On March 17, 2026, Agyemang also filed a notice requesting that ICE disclose his immigration records and the status of his removal, as well as a motion to compel production of evidence on the likelihood of his removal. (Doc. 3; Doc. 5). On April 2, 2026, Agyemang filed two supplemental briefs in support of his petition. (Doc. 9; Doc. 10). On April 9, 2026, Hoover filed a response to Agyemang's petition (Doc. 14), and on April 15, 2026, Agyemang filed a traverse. (Doc. 15). Accordingly, Agyemang's petition is ripe for disposition.

## II.  LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in

only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan,* 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing or release if the Court determines that a noncitizen habeas petitioner is entitled to such relief under relevant constitutional or statutory protections. *See A.L. v. Oddo,* 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see Munoz-Saucedo v. Pittman,* 789 F. Supp. 3d 387, 400 (D.N.J. 2025) (finding petitioner's continued detention without reasonably imminent removal is unreasonable and ordering release).

### III.   JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the Immigration and Nationality Act ("INA") strips district courts of subject-matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR").

4

However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later on a PFR. *Kahlil*, 164 F.4th at 273-74.

Habeas actions based on whether a petitioner is subject to unconstitutionally lengthy detention remain in the jurisdiction of district courts. *Kahlil, 164 F.4th at 277-79* (holding detention-specific claims, like length and conditions-of-confinement claims, do not arise from removal proceedings and can be addressed by district courts); *see Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."). The question of whether a petitioner's detention has been unconstitutionally long is wholly collateral to removal proceedings and cannot be meaningfully reviewed on a PFR. *Kahlil, 164 F.4th at 278-79* (finding that length of confinement claim "does not get channeled into the PFR review process"). Thus, the Court retains jurisdiction over the legal question of whether Agyemang's detention after his order of removal became final has become unconstitutionally prolonged and unrelated to the purpose of removal. *Jennings*, 583 U.S. at 294; *Kahlil, 164 F.4th at 274-79*; *Zadvydas*, 533 U.S. at 688.

## IV.    DISCUSSION

Agyemang contends that his re-detention violates the Due Process Clause of the Fifth Amendment, section 1231 of the INA, 8 C.F.R. § 241.14, and the Administrative Procedure Act because the re-detention has exceeded six months and removal is not reasonably

foreseeable. (Doc. 1, at 4-6). To support his contention that removal is not reasonably foreseeable Agyemang submits that despite ICE's repeated assertions that removal will occur soon, ICE has not provided Agyemang with travel documents, evidence that Guinea will accept him, or the date of his removal flight. (Doc. 1, at 1, 3-4). Agyemang also submits evidence of communications with ICE Officer Ian McArdle ("Officer McArdle"), which indicate that ICE does not know with any certainty when Agyemang will be removed from the United States. (Doc. 1-11; Doc. Doc. 15-4).

The government counters that ICE is authorized to detain and deport Agyemang, the duration of Agyemang's detention remains presumptively reasonable, and his request for release is premature. (Doc. 14, at 2). The government contends that Agyemang slowed the removal process by expressing fear of persecution in Guinea and requesting a fear interview. (Doc. 14, at 6). The government also avers that Agyemang has not shown that he will be persecuted or tortured in Guinea and that Guinea will accept Agyemang for removal in the reasonably foreseeable future. (Doc. 14, at 6).

Section 1231 of the INA provides for the detention of noncitizens with final orders of removal. 8 U.S.C. § 1231. Pursuant to 8 U.S.C. § 1231, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Noncitizens convicted of certain criminal offenses and noncitizens whom the Attorney General finds to be a risk to the community or unlikely to comply with an order of removal may be detained beyond the 90-day removal period. 8 U.S.C. § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678, 690-91 (2001), the Supreme Court found that indefinite detention of a noncitizen with a final order of removal violates the Due Process Clause of the Fifth Amendment, and that detention of a noncitizen with a final order of

removal must be limited with a definite endpoint. The Supreme Court determined that to discern whether such post-order of removal detention comports with the Due Process Clause of the Fifth Amendment, habeas courts must ask whether the detention "exceeds a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699. The Supreme Court found that detention post-order of removal is presumed reasonable for a period under six months. *Zadvydas*, 533 U.S. at 701. After the presumptively reasonable six-month period runs and the detained noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. As the period of confinement grows, what counts as reasonably foreseeable future conversely shrinks. *Zadvydas*, 533 U.S. at 701. If removal is ultimately not reasonably foreseeable, habeas courts should hold continued detention unreasonable and order release. *Zadvydas*, 533 U.S. at 699-700.

Agyemang's presumptively reasonable six-month period of § 1231 detention has run. *See Zadvydas* 533 U.S. at 701. Agyemang has been re-detained under 8 U.S.C. § 1231 for over eight months, while the government has attempted to effectuate his removal. (Doc. 1, at 3). Agyemang's § 1231 detention has also become unreasonable because Agyemang provides good reason to believe removal is not reasonably foreseeable, which the government fails to rebut. *See Zadvydas* 533 U.S. at 701; *see also Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 398 (D.N.J. 2025). Agyemang provides evidence that he has repeatedly asked and been denied information from ICE officers regarding his travel documents, whether Guinea will accept him, and when removal will occur. (Doc. 1-11; Doc. 2-1, at 2).

Six months into Agyemang's removal period, on February 26, 2026, Officer McArdle provided that,

Documents and flights are being facilitated but I do not have a[n] updated timeline on when that might be. If you are removed to Guinea, that means that they will have formally accepted you into their country. These removals are negotiated at the Department of State level, to the best of my knowledge.

(Doc. 1-11, at 1).

Eight months into Agyemang's removal period, on April 1, 2026, Officer McArdle provided that,

I honestly wish that even I had a timeline. Everything is up to the people scheduling the flights. They book one entire airplane and once they have enough people to fill it only then do they schedule the flight. What this means is that its unpredictable. I wish they gave me a timeline for myself so then I'd know how long it's going to take. But they don't. Lately its been taking a while and then they give me one days' notice to prepare the document and packet for flights . . . As of right now, you're still on a manifest waiting for a seat.

(Doc. 15-2, at 4).

Additionally, the government detained Agyemang for three months past the 90-day removal period before designating a third country that Agyemang could be removed to. (Doc. 2-1, at 2). Over three months have passed since the government designated Guinea as a safe third country for Agyemang's removal, and the government has not provided Agyemang or the Court with any documentation to support that Guinea will take Agyemang, travel documents for Agyemang, or flight information for Agyemang's removal. (Doc. 1, at 4). To

8

rebut Agyemang's showing, the government only provides that Agyemang slowed the removal process by requesting a fear interview, but removal is still reasonably foreseeable. (Doc. 14, at 6-7).

While the government designated Guinea as a safe third country for removal and Agyemang failed to demonstrate credible fear of removal to Guinea in his interview, the messages from Officer McArdle to Agyemang demonstrate that ICE does not have a timeline for Agyemang's removal. As the government fails to rebut Agyemang's showing that there is no timeline for his removal or provide evidence that Guinea will accept Agyemang, there is no significant likelihood of Agyemang's removal in the reasonably foreseeable future. *See Zadvydas* 533 U.S. at 701; *see Munoz-Saucedo*, 789 F. Supp. 3d at 398 (finding petitioner's removal is not reasonably foreseeable because removal to third-countries pursuant to the Convention Against Torture is rare and the government failed to secure travel documents or identify alternate countries for removal); *see also Vincent v. Blanche*, No. 2:26-cv-00104, 2026 WL 1030619, at *5, *13 (D.N.M. April 16, 2026) (finding petitioner's removal was not reasonably foreseeable where petitioner lacked travel documents and no removal flight was scheduled). Accordingly, Agyemang's petition for writ of habeas corpus is **GRANTED**.[2] (Doc. 1).

---

[2] As the Court grants relief under the Due Process Clause of the Fifth Amendment, the Court declines to address Agyemang's administrative procedure act claims at this time. (Doc. 1, at 5-6). Likewise, as Agyemang provides evidence that his removal was not reasonably foreseeable with the documents in his possession, the Court does not need additional fact discovery to dispose of Agyemang's petition. 28 U.S.C. § 2254, Rule 6 ("A judge may, for good cause, authorize a party to conduct discovery. . .and may limit the extent of discovery); *see Bracy v. Gramley*, 520 U.S. 899, 904 (1997) ("A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."); *see also Williams v. Beard*, 637 F.3d 195, 209 (3d Cir. 2011) ("habeas petitioners are entitled to discovery only upon a showing of 'good cause,' and even then, the scope of discovery is subject to a district court's sound discretion"). Accordingly, Agyemang's motion to compel

## V.    CONCLUSION

For the foregoing reasons, Agyemang's petition for writ of habeas corpus is **GRANTED**. (Doc. 1). Hoover is **ORDERED** to release Agyemang under appropriate conditions of supervisory release. The Clerk of Court is directed to close this matter.

An appropriate Order follows.

**BY THE COURT:**

**Dated: April 30, 2026**

*/s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**

---

(Doc. 5) is **DENIED**. Agyemang's motion to expedite proceedings (Doc. 4), motion for immediate release (Doc. 6), and supplement demonstrating material change (Doc. 9) are duplicative of Agyemang's petition and motion in support; therefore, Agyemang's duplicative motions (Doc. 4; Doc. 6; Doc. 9) are **DENIED as moot**.

10