**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

ALEX AGYEMANG,

               Petitioner,

   v.

WARDEN OF CLINTON COUNTY
CORRECTIONAL FACILITY, et al.,

          Respondents.

CIVIL ACTION NO. 3:26-CV-00688

(MEHALCHICK, J.)

**MEMORANDUM**

Before the Court are Petitioner Alex Agyemang's ("Agyemang") emergency motion for temporary restraining order to preserve status quo pending protection screening (Doc. 23); emergency motion to temporarily bar removal pending protection screening (Doc. 25); motion for appointment of counsel (Doc. 26); emergency motion to expedite (Doc. 29); emergency motion for alternative mandamus or status-quo relief (Doc. 32); and emergency motion to lift the Court's May 1, 2026 order (Doc. 34), along with accompanying notices (Doc. 24; Doc. 27; Doc. 28; Doc. 33; Doc. 41) and briefing (Doc. 30; Doc. 39; Doc. 40). For the following reasons, Agyemang's emergency motions (Doc. 23; Doc. 25; Doc. 26; Doc. 29; Doc. 32; Doc. 34) are **GRANTED in part and DENIED in part**.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Agyemang is a citizen of Ghana, who entered the United States on a B2 visa as a temporary visitor for pleasure on or about June 4, 2006. (Doc. 14, at 2). Agyemang overstayed his B2 visa, and on April 9, 2019, officers in Newark, New Jersey arrested Agyemang and charged him with receiving stolen property. (Doc. 14, at 3). On April 16, 2019, ICE served Agyemang with a Notice to Appear, charging Agyemang as removable for remaining in the

United States longer than permitted as a nonimmigrant visitor. (Doc. 14, at 3). On May 21, 2019, Agyemang posted bond, and ICE released him from custody. (Doc. 1, at 3; Doc. 14, at 3).

On April 20, 2023, the United States District Court for the District of New Jersey charged Agyemang with one count of conspiracy to sell, receive, or possess stolen property and one count of sale, receipt, or possession of stolen goods and sentenced Agyemang to a year and a day of imprisonment. (Doc. 14, at 4). Following his criminal sentence, ICE transferred Agyemang to immigration detention on March 4, 2025. (Doc. 1, at 3; Doc. 14, at 4). On August 6, 2025, an immigration judge issued an order removing Agyemang but withholding removal to his home country, Ghana under the Convention Against Torture. (Doc. 1, at 3; Doc. 14, at 4). Agyemang did not appeal the removal order, making it a final order of removal. (Doc. 1, at 3; Doc. 14, at 4).

On January 16, 2026, the Department of Homeland Security ("DHS") informed Agyemang that it intended to remove him to Guinea. (Doc. 1, at 4; Doc. 14, at 4). Agyemang expressed fear of removal to Guinea and requested a fear interview. (Doc. 1, at 4). On February 6, 2026, an ICE officer interviewed Agyemang regarding his fear of removal to Guinea and determined that Agyemang did not establish that it is more likely than not that he will be persecuted or tortured in Guinea. (Doc. 2-1, at 2; Doc. 14, at 4).

Agyemang commenced this action by filing a petition for writ of habeas corpus on March 17, 2026 (Doc. 1), which the Court granted on April 30, 2026. (Doc. 17). The Court found that continued detention was not reasonable because Agyemang's removal was not foreseeable. (Doc. 17). On April 30, 2026, the government filed a motion for reconsideration of the Court's order to release Agyemang from custody. (Doc. 18). The government's motion

for reconsideration provided that Agyemang will be removed to Sierra Leone on or about May 19, 2026. (Doc. 18). With the government's new evidence that it would execute Agyemang's removal on May 19, 2026, the Court stayed its previous order to release Agyemang from ICE custody. (Doc. 20).

On May 1, 2026, Agyemang filed two emergency motions, requesting that the Court stay his removal until ICE affords him a fear interview on removal to Sierra Leone. (Doc. 23; Doc. 25). On May 7, 2026, Agyemang filed a motion for appointment of counsel. (Doc. 26). On May 8, 2026, Agyemang filed a motion to expedite. (Doc. 29). According to the public record, after filing these motions, ICE transferred Agyemang to a detention facility in Texas to facilitate his removal to Sierra Leone. United States Immigration and Customs Enforcement, ICE Detainee Locator, https://locator.ice.gov/odls/#/results (last visited May 13, 2026).

On May 15, 2026, Agyemang filed an emergency motion for alternative mandamus relief seeking stay of removal to Sierra Leone. (Doc. 32). On May 18, 2026, Agyemang filed an emergency motion notifying the Court that the Third Circuit granted Agyemang stay of removal to Sierra Leone. (Doc. 34; Doc. 34-3). Pursuant to the Third Circuit's order, review of Agyemang's order of removal to Sierra Leone is stayed pending a decision by the Third Circuit in the consolidated matters of *Chavez-Barrios v. Attorney General*, C.A. No. 25-2358, *Velasquez Banegas v. Attorney General*, C.A. No. 25-2415, and *Alvarez Gomez v. Attorney General*, C.A. No. 25-2424, as well as pending a resolution of all claims that afford class-wide relief in *D.V.D. v. U.S. Department of Homeland Security*, 788 F. Supp. 3d 355 (D. Mass 2025). (Doc. 34-3, at 2).

On May 18, 2026, the Court ordered the government to respond to Agyemang's

3

emergency motions, showing why the Court should not reinstate its April 30, 2026 order (Doc. 17) releasing Agyemang from custody. (Doc. 35, at 2). The government provides that before the Court's May 18, 2026 order to show cause was issued, ICE moved Agyemang to Louisiana. (Doc. 38, at 2). The government also provides that ICE intends to transfer Agyemang back to Pennsylvania. (Doc. 38, at 2). The public record indicates that Agyemang has since been transferred to custody at the Moshannon Valley Ice Processing Center in Clearfield County, Pennsylvania. United States Immigration and Customs Enforcement, ICE Detainee Locator, https://locator.ice.gov/odls/#/results (last visited May 28, 2026). On May 20, 2026, the government responded to Agyemang's emergency petitions, and on May 22 and May 28, 2026, Agyemang filed reply briefs. (Doc. 38; Doc. 39; Doc. 40). On May 28, 2026, Agyemang also filed a notice of urgency and request for expedited consideration. (Doc. 41). Accordingly, Agyemang's emergency motions (Doc. 23; Doc. 25; Doc. 26; Doc. 29; Doc. 32; Doc. 34) are ripe and ready for disposition.

## II.    LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with

4

regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan,* 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing or release if the Court determines that a noncitizen habeas petitioner is entitled to such relief under relevant constitutional or statutory protections. *See A.L. v. Oddo,* 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see Munoz-Saucedo v. Pittman,* 789 F. Supp. 3d 387, 400 (D.N.J. 2025) (finding petitioner's continued detention without reasonably imminent removal was unreasonable and that the proper remedy was release from custody).

### III.   JURISDICTION

District courts have jurisdiction to grant habeas relief when the court has personal jurisdiction over the petitioner's immediate custodian. 28 U.S.C. § 2241(a); *Braden v. 30th Jud. Cir. Ct. Ky.*, 410 U.S. 484, 495 (1973); *Khalil v. President, United States*, 164 F.4th 259, 268 (3d Cir. 2026). When a petitioner is transferred to another jurisdiction, the court that "would have been able to exercise jurisdiction on the date the petition was filed" retains jurisdiction over the habeas action. *Khalil,* 164 F.4th at 268-69 (quoting *Martinez-Nieto v. Att'y Gen.*, 805 F. App'x 131, 135 (3d Cir. 2020)) (citing *Khalil v. Joyce,* 777 F. Supp. 3d 369, 392 (D.N.J. 2025)). "[A] habeas court with jurisdiction does not lose it because the detainee has been moved out of the district." *Khalil,* 777 F. Supp. 3d at 386; *Rumsfeld v. Padilla,* 542 U.S. 426, 441 (2004); *Ex parte Endo,* 323 U.S. 283, 284-85 (1944). Accordingly, the government's transfers of Agyemang to Texas, Louisiana, and the Western District of Pennsylvania do not divest the Court of personal jurisdiction. *See Khalil,* 164 F.4th at 271.

## IV.    DISCUSSION

In his emergency motions and accompanying filings, Agyemang requests that the Court enjoin his removal to Sierra Leone until the government provides Agyemang with a fear interview and opportunity to seek review of an adverse determination. (Doc. 23; Doc. 24; Doc. 25; Doc. 26; Doc. 27; Doc. 28; Doc. 29; Doc. 30; Doc. 32). Agyemang also requests that the Court reinstate its April 30, 2026 release order (Doc. 17) because removal is no longer imminent. (Doc. 33; Doc. 34). The government counters that Agyemang remains subject to mandatory detention under 8 U.S.C. § 1226(c) based on his criminal record. (Doc. 38, at 1). Alternatively, the government avers that Agyemang's detention also remains proper under 8 U.S.C. § 1231 because Agyemang slowed his own removal by objecting to the designation of Sierra Leone as his country of removal and because Agyemang cannot demonstrate that the government will not remove him in the reasonably foreseeable future. (Doc. 38, at 10). The Court will first address its lack of jurisdiction to enjoin Agyemang's removal to a third country. The Court will then address whether Agyemang remains properly detained under § 1226(c) or § 1231 and whether Agyemang's detention has become unconstitutionally prolonged and/or unrelated to the purpose of removal.

### A.    THE COURT LACKS SUBJECT-MATTER JURISDICTION TO ENJOIN AGYEMANG'S REMOVAL TO A THIRD COUNTRY.

The Court does not have subject-matter jurisdiction to enjoin Agyemang's removal to Sierra Leone. 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). However, sections 1252(g), 1252(b)(9), and 1252(a) of the Immigration and Nationality Act ("INA") limit the authority of federal courts to grant writs of habeas corpus in

6

immigration matters. *Jennings v. Rodriguez*, 583 U.S. 281, 292-96 (2018). 8 U.S.C. § 1252(g) and § 1252(b)(9) are applicable to Agyemang's claim for relief from removal.

Section 1252 of the INA provides for the judicial review of orders of removal. 8 U.S.C. § 1252. Section 1252(g) specifically provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Section 1252(g) strips district courts of jurisdiction to review the Attorney General's decision to execute a removal order or actions taken to execute a removal order. *Tazu v. Attorney General United States*, 975 F.3d 292, 298 (3d Cir. 2020).

Section 1252(g) can overlap with § 1252(b)(9), which states that if a "claim aris[es] from any action taken or proceedings brought to remove an alien," then the review of that claim "shall be available only in judicial review of a final order." *Tazu*, 975 F.3d at 299 (citing *Am.-Arab Anti-Discrimination Committee*, 525 U.S. 471, 483-84 (1999)). Stated differently, § 1252(b)(9), or the "zipper-clause," channels claims arising from actions taken to remove a noncitizen into a petition for review of a final order of removal ("PFR"). *Nasrallah v. Barr*, 590 U.S. 573, 579 (2020); *Tazu*, 975 F.3d at 299. The purpose of this "zipper clause" is to "funnel 'most claims that even relate to removal' into a single proceeding." *Tazu*, 975 F.3d at 296 (quoting *E.O.H.C. v. Secretary U.S. Dept. Homeland Sec.*, 950 F.3d 177,182 (3d Cir. 2020)). 8 U.S.C. § 1252(b)(2) provides that such a single proceeding brought through a PFR "shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." *See Nasrallah*, 590 U.S. at 579 (quoting *INS v. St. Cyr*, 533 U.S.

7

289, 313 n. 37 (2001)) ("a noncitizen's various challenges arising from the removal proceeding must be 'consolidated in a petition for review and considered by the court of appeals'").

Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit reaffirmed that the INA strips district courts of subject-matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a PFR. However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later on a PFR. *Kahlil*, 164 F.4th at 273-74. Courts in the Third Circuit have found that review of a third country removal notice, issued to a noncitizen with a deferral of removal to their country of origin under the CAT, does not involve "now or never" questions of law and must be channeled into a PFR. *T.A. v. Sage*, No. 3:26-CV-00609, 2026 WL 448807, at *7 (M.D. Pa. Feb. 17, 2026); *Salih v. Hoover*, No. 4:25-CV-02407, 2026 WL 161773, at *1-*2 (M.D. Pa. Jan. 21, 2026); *Khachatryan v. Oddo*, 3:25-CV-00546, Doc. 15, (W.D. Pa. Jan. 23, 2026).

In *T.A. v. Sage*, No. 3:26-CV-00609, 2026 WL 448807, at *7 (M.D. Pa. Feb. 17, 2026), the court laid out three avenues through which a petitioner with a notice of removal to a third country could seek relief outside the writ of habeas. One avenue for review available to petitioners with notice of removal to a third country is moving to reopen their administrative proceedings, providing the opportunity to litigate fear-based claims as to the third country and to ultimately seek judicial review through a PFR. *T.A.*, 2026 WL 448807, at *7. A second avenue available to petitioners with notice of removal to a third country is requesting a reasonable fear interview. *T.A.*, 2026 WL 448807, at *7. If the fear determination is negative, the government's guidance contemplates reopening removal proceedings. *T.A.*, 2026 WL

8

448807, at *7. A third avenue available to petitioners with notice of removal to a third country is to argue the principles of equitable tolling and pursue a PFR before the Third Circuit on the order deferring removal to the petitioner's country of origin.[1] *T.A.*, 2026 WL 448807, at *7. These three alternative avenues for review outside the writ of habeas corpus, demonstrate that review of notice of removal to a third country does not involve collateral, "now or never" legal questions. *See T.A.*, 2026 WL 448807, at *7.

Agyemang's request for the Court to enjoin removal to Sierra Leone until he receives a fear interview is intertwined with the removal process. While an immigration judge ordered Agyemang's removal on August 6, 2025, the fear interview Agyemang presently seeks is still a removal related activity because it directly concerns the execution of his removal order. (Doc. 1, at 3; Doc. 14, at 4); *see T.A.*, 2026 WL 448807, at *5-*6 (finding the third country designation is an action taken to effectuate removal and that due process challenges associated with a third country designation are bound up with the removal process); *Salih*, 2026 WL 161773, at *2 (quoting *Tonfack v. Att'y Gen. U.S.*, 580 F. App'x 79, 82 (3d Cir. 2014)) ("where an individual argues that a country 'is not a proper country of removal,' such an argument relates to the removal process, and it is proper for a district court to 'dismiss [such a petition] for lack of jurisdiction'"). As such, a "challenge to [a] third-country removal is not collateral to the removal process." *T.A.*, 2026 WL 448807 at * 5; *Salih*, 2026 WL 161773, at *2 (finding a challenge to a third country removal plainly relates to the underlying order of removal).

---

[1] The INA provides that a PFR "must be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). In *Riley v. Bondi*, 606 U.S. 259, 273-74 (2025), the Supreme Court held that the 30-day PFR deadline is a non-jurisdictional claim processing rule. *See T.A.*, 2026 WL 448807, at *7. "[N]onjurisdictional limitations periods are presumptively subject to equitable tolling," potentially allowing a PFR to proceed after the 30-day filing deadline. *Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 208-09 (2022); *see T.A.*, 2026 WL 448807, at *7.

Third country designation is an action taken to effectuate removal, and due process challenges to the adequacy of the fear-screening process related to that designation is "bound up" with the execution of a removal order. *T.A.*, 2026 WL 448807 at * 5 (citing *Tazu*, 975 F.3d at 299); *Salih*, 2026 WL 161773, at *2.

The government's designation of Sierra Leone for Agyemang's third-country removal is so bound up with the execution of his removal order that § 1252 and § 1252(b)(9) strip the Court of subject-matter jurisdiction to enjoin removal to Sierra Leone. Agyemang has sought the avenues of review contemplated in *T.A. v. Sage* by requesting a stay of removal and filing a PFR with the Third Circuit. (Doc. 34-4); 2026 WL 448807, at *7. Accordingly, Agyemang's requests for stay of removal to Sierra Leone are **DENIED for lack of jurisdiction**. (Doc. 23; Doc. 25; Doc. 26; Doc. 29; Doc. 32; Doc. 34).

B.    AGYEMANG'S CONTINUED DETENTION VIOLATES DUE PROCESS.

Agyemang continued detention violates the Due Process Clause of the Fifth Amendment because the detention is no longer related to purpose of removal. First, Agyemang is currently detained pursuant to 8 U.S.C. § 1231, not 8 U.S.C. § 1226(c), because he has a final order of removal. (Doc. 1, at 3; Doc. 14, at 4). 8 U.S.C. § 1231 provides for the detention of noncitizens during the removal period that commences after their order of removal becomes final. 8 U.S.C. § 1231(a)(1)(B), (2)(A). Whereas 8 U.S.C. § 1226(c) provides for the detention of noncitizens with certain criminal convictions "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a), (c). Where a petitioner with a final order of removal subsequently obtains a stay of removal after the removal period has expired, Court's in the Third Circuit have found that "the price for securing a stay of removal should not be continuing incarceration." *Oyedeji v. Ashcroft*, 332 F.

Supp. 2d 747, 753 (M.D. Pa. 2004); *see Wong v. Gonzalez*, No. 5-5430, 2006 WL 995460, at *3-*4 (D.N.J. April 12, 2006) (finding petitioner's stay of removal should not change the principle that confinement must not continue beyond the time when the justifications for custody are no longer applicable).

The government avers that Agyemang's detention is now proper under 8 U.S.C. § 1226(c), reasoning that Agyemang's petition for review to the Third Circuit renders his August 6, 2025 removal order no longer administratively final. (Doc. 38, at 6). However, Agyemang's has repeatedly provided to the Court that he does not seek to upset the order of removal and withholding of removal to his home country of Ghana, but that he instead seeks review of whether removal to Sierra Leone may occur before protection screening procedures are completed. (Doc. 23; Doc. 24; Doc. 25; Doc. 29). The government even concedes that Agyemang technically did not challenge his final order of removal. (Doc. 38, at 6). Accordingly, Agyemang's order of removal remains administratively final, and he is subject to detention under 8 U.S.C. § 1231. *See Oyedeji*, 332 F. Supp. 2d at 753; *see Wong*, 2006 WL 995460, at *3-*4.

Second, the government fails to rebut the showing Agyemang has already made that removal is not reasonably foreseeable. Section 1231 of the INA provides for the detention of noncitizens with final orders of removal. 8 U.S.C. § 1231. Pursuant to 8 U.S.C. § 1231, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Noncitizens convicted of certain criminal offenses and noncitizens whom the Attorney General finds to be a risk to the community or unlikely to comply with an order of removal may be detained beyond the 90-day removal period. 8 U.S.C. § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678, 690-91 (2001), the Supreme Court found that indefinite detention of a noncitizen with a final order of removal violates the Due Process Clause of the Fifth Amendment, and that detention of a noncitizen with a final order of removal must be limited with a definite endpoint. The Supreme Court determined that to discern whether such post-order of removal detention comports with the Due Process Clause of the Fifth Amendment, habeas courts must ask whether the detention "exceeds a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699. The Supreme Court found that detention post-order of removal is presumed reasonable for a period under six months. *Zadvydas*, 533 U.S. at 701. After the presumptively reasonable six-month period runs and the detained noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. As the period of confinement grows, what counts as reasonably foreseeable future conversely shrinks. *Zadvydas*, 533 U.S. at 701. If removal is ultimately not reasonably foreseeable, habeas courts should hold continued detention unreasonable and order release. *Zadvydas*, 533 U.S. at 699-700.

Agyemang's presumptively reasonable six-month period of § 1231 detention has run. *See Zadvydas* 533 U.S. at 701. Agyemang has been re-detained under 8 U.S.C. § 1231 for over nine months, while the government has attempted to effectuate his removal. (Doc. 1, at 3). Agyemang's § 1231 detention has also become unreasonable because Agyemang provides good reason to believe removal is not reasonably foreseeable, which the government fails to rebut. *See Zadvydas* 533 U.S. at 701; *see also Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 398 (D.N.J. 2025). Agyemang provides evidence that he has repeatedly asked and been

12

denied information from ICE officers regarding his travel documents, whether a third country will accept him, and when removal will occur. (Doc. 1-11; Doc. 2-1, at 2). While the government previously assigned Agyemang to a May 19, 2026 removal flight, the Third Circuit's May 15, 2026 stay order halted the government's removal efforts. (Doc. 19-1; Doc. 34-4). The May 19, 2026 removal date has now come and gone, and the government provides no new reason to believe Agyemang's removal is reasonably foreseeable. (Doc. 38, at 10). The government instead focuses on their contention that Agyemang cannot demonstrate that he will not be removed in the reasonably foreseeable future and that ICE has conducted custody reviews for Agyemang during his prolonged detention. (Doc. 38, at 10).

Further, with the Third Circuit's May 15, 2026 stay order, Agyemang now cannot be removed until the Third Circuit reaches a decision on the consolidated matters of *Chavez-Barrios v. Attorney General*, C.A. No. 25-2358, *Velasquez Banegas v. Attorney General*, C.A. No. 25-2415, and *Alvarez Gomez v. Attorney General*, C.A. No. 25-2424 and until the resolution of all claims afforded class-wide relief in *D.V.D. v. U.S. Department of Homeland Security*, 788 F. Supp. 3d 355 (D. Mass 2025). (Doc. 34-3, at 2). Even after these matters on appeal are resolved, Agyemang's removal will still not be imminent if the Third Circuit remands the case for further adjudication or administrative process. Accordingly, Agyemang's removal to a third country is not significantly likely in the reasonably foreseeable future. Agyemang's requests to reinstate the Court's April 30, 2026 order (Doc. 17) releasing him from custody are hereby **GRANTED**. (Doc. 23; Doc. 25; Doc. 26; Doc. 29; Doc. 32; Doc. 34). Respondents are ordered to release Agyemang from custody.[2]

---

[2] The Court notes that Agyemang also requests that the Court appoint counsel for him in this matter. (Doc. 26). The government takes no position on Agyemang's motion for appointment of counsel. (Doc. 38, at 3). As the Court grants Agyemang's request for release

## V.   CONCLUSION

For the foregoing reasons, Agyemang's emergency motions (Doc. 23; Doc. 25; Doc. 26; Doc. 29; Doc. 32; Doc. 34) are **GRANTED in part and DENIED in part**. Agyemang's requests for stay of removal to Sierra Leone are **DENIED for lack of jurisdiction**. Agyemang's requests to reinstate the Court's April 30, 2026 order (Doc. 17) releasing him from custody are **GRANTED**. Respondents are ordered to release Agyemang from custody under appropriate conditions of supervised release. Respondents are directed to return Agyemang's personal property that was lost during his transfers of custody.

An appropriate Order follows.

**BY THE COURT:**

**Dated: June 2, 2026**               /s/ *Karoline Mehalchick*
                              **KAROLINE MEHALCHICK**
                              **United States District Judge**

---

from custody and denies the remaining relief for lack of subject-matter jurisdiction, the Court **DENIES** Petitioner's motion to appoint counsel **as moot**. (Doc. 26). *See In re Walls*, No. 22-2773, 2022 WL 16549081, at *1 (3d Cir. Oct. 31, 2022) (nonprecedential) ("because the matter has been adjudicated, an order directing the District Court to hold a hearing or appoint counsel would have no effect on the proceedings"); *see also Hersh v. Chester Cnty. Clerk of Cts.*, No. CV 21-2615, 2021 WL 5139971, at *4 (E.D. Pa. Nov. 3, 2021) (denying a motion to appoint counsel as moot after adjudicating an action).